## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PAMELA A. JONES, ANDREA MAYS, NICOLE LEWIS and LILLIAN WELDON, on behalf of themselves and others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) Case No.: 1:07−CV−00036 ) |
| v. | ) ) |
| WALGREEN CO., | ) HONORABLE RUBEN CASTILLO ) |
| Defendant. | ) ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF A SETTLEMENT CLASS**

Matthew J. Piers
Joshua Karsh
José Jorge Behar
Hughes Socol Piers
   Resnick & Dym Ltd.
70 West Madison Street, Suite 4000
Chicago, IL 60602
Telephone: 312.580.0100
Facsimile: 312.580.1994

John M. Brown
Law Office of John M. Brown
118 Oak Street
Hartford, CT 06106
Telephone: 860.560.0100
Facsimile: 860.656.763

*Attorneys for Plaintiffs and the Plaintiff Class*



## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................1

II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE. ........3

        A.      Legal Standard...................................................................3

        B.      Application of the Seventh Circuit's Factors Strongly Support
                Final Approval of the Settlement Agreement. ...............................4

                1.      Plaintiffs' case on the merits, balanced against the
                        Defendant's settlement offer ....................................................4

                2.      The defendant's ability to pay .........................................6

                3.      The likely complexity, length and expense of further
                        litigation and public interest....................................................6

                4.      The amount of opposition to the settlement and the
                        reactions of members of the class to the settlement...........8

                        a.      Benia Joseph ......................................................9
                        b.      Amber Scott .......................................................9
                        c.      Katrina Schwartz .........................................10
                        d.      Kelly Ann Stefanich .......................................10
                        e.      Bebi Zaima Alli ..............................................11

                5.      The presence of collusion in reaching a settlement .......12

                6.      The opinion of competent counsel .................................13

                7.      The stage of the proceedings and the amount of discovery
                        completed .................................................................13

III.    THE NOTICE PROVIDED TO THE CLASS SATISFIES RULE 23 AND
        DUE PROCESS. .................................................................14

IV.     THE REQUIREMENTS OF RULE 23(a) and 23(b)(3) HAVE BEEN
        SATISFIED. ....................................................................15

00248339

     A.     The Requirements of Rule 23(a) Are Satisfied. ...........................16

     B.     The Requirements of Rule 23(b)(3) Are Satisfied. ....................17

V.     THE AGREED UPON ATTORNEY'S FEES ARE REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL. ................................17

VI.     THE PROPOSED INCENTIVE AWARDS TO THE NAMED PLAINTIFFS ARE REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL ................................................................18

VII.     CONCLUSION ................................................................................19

00248339

# TABLE OF AUTHORITIES

**Cases**

*American Civil Liberties Union of Illinois v. U.S. Gen. Serv. Admin.*, 235 F. Supp. 2d 816 (N.D. Ill. 2002)..............................................................................7

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).......................16, 17

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .........................................................19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................19

*De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983) ...................16

*Dukes v. Wal-Mart*, 603 F.3d 571, *cert. granted* 2010 WL 3358931 (Dec. 6, 2010) (9th Cir. 2010)..........................................................................................6

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ...................4, 7, 8

*Hispanics United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) ....................................................................................passim

*In re General Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).........................................................................................15

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...............................................3, 4

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th 1997) ............................17

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992).....................................16

*Tucker v. Walgreen Co.*, Nos. 05-cv-440-GPM and 07-cv-00172 (S.D. Ill., East St. Louis Division) .........................................................................13, 14, 18

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978 (7th Cir. 2002) .........3, 8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................18

**Statutes**

42 U.S.C. §2000e *et seq.*.........................................................................................1

**Other Authorities**

4 Newberg on Class Actions § 11:53 (4th ed. 2010) ....................................15

**Rules**

Fed. R. Civ. P. 23 ...............................................................1, 3, 15, 16, 17

00248339

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, plaintiffs Pamela A. Jones, Andrea Mays, Nicole Lewis and Lillian Weldon submit this memorandum in support of the parties' joint motion for final approval of the proposed settlement.

This Memorandum incorporates by reference Plaintiffs' Memorandum in Support of Joint Motion for Preliminary Approval ("Preliminary Approval Memorandum"), which sets forth, among other things, a detailed account of the prior proceedings in this case, plaintiffs' claims and defendants' defenses, the scope of the proposed class, and the terms of the proposed class settlement. Dkt. #111.

## I.    INTRODUCTION

The lead plaintiff in this action, Pamela A. Jones, filed a nationwide class action complaint against Walgreen Co. ("Walgreens") in June of 2006. She filed it in the United States District Court for the District of Connecticut. She alleged that "Walgreens practices nationwide (plus Puerto Rico) systemic gender discrimination" against female, retail store (non-pharmacist) management employees in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* In January 2007, that case was transferred to this Court. On November 29, 2007, this Court administratively dismissed the case without prejudice (and tolled the applicable statute of limitations) to allow the parties time to explore the possibility of settlement.

In August 2010, Ms. Jones filed a proposed amended complaint in this case, joined by three additional Named Plaintiffs, each of whom had also filed a charge of

1

00248339

discrimination against Walgreens with the U.S. Equal Employment Opportunity Commission, alleging gender discrimination in pay and promotions on a class basis. After being granted leave by this Court, Ms. Jones filed the amended class action complaint in September 2010.

On September 2, 2010, this Court granted the parties' joint motion for an order, *inter alia,* conditionally certifying the settlement class of "[a]ll women who were employed by Walgreens as an MGT, EXA, or MGR at any time between September 11, 2004 and March 31, 2009,"[1] directing distribution of notice to the class, and preliminarily approving the class action settlement.

The proposed settlement provides for substantial monetary and injunctive relief for the Settlement Class. Following final approval, Walgreens will deposit $17 million into a "Qualified Settlement Fund" to cover awards to class members, costs of notice and administration, reimbursement of class counsel's costs and expenses, attorneys' fees for class counsel and incentive awards for the Named Plaintiffs, as approved by the Court. Settlement Agreement § XI (Exhibit A to Preliminary Approval Memorandum). Payments to class members range from $100.23 to $5,913.94. *See* Mark Patton Declaration at ¶11 ("Patton Decl."), attached hereto as Exhibit 1. In addition to the monetary relief, the injunctive provisions of the Settlement Agreement are responsive to the class claims. The injunctive relief will last for three (3) years and require Walgreens to significantly modify and reform its personnel practices and policies in order to eliminate the

---

[1] "MGT" means the position of Assistant Manager/Management Trainee. "EXA" is an Executive Assistant Manager position, and "MGR" is a Store Manager position.

00248339

potential for bias against women.  Settlement Agreement § VIII.

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

### A.    <u>Legal Standard</u>

The standard against which a proposed class settlement should be evaluated

is whether the settlement taken as a whole is "fair, reasonable, and adequate."  Fed.

R. Civ. P. 23(e)(2); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).  *Hispanics*

*United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997)(Castillo, J.).

The determination whether to grant approval of a class action settlement is within

the sound discretion of the Court.  *See Isby*, 75 F.3d at 1196-97 (applying abuse of

discretion standard to review of district court's approval of class action settlement).

Federal courts "naturally favor the settlement of class action litigation."    *Id.*

at 1196.  *See also Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 986

(7th Cir. 2002)("Federal courts favor settlement, so the district court's inquiry into

the settlement structure is limited to whether the settlement is lawful, fair,

reasonable and adequate.").  As this Court has previously stated, "courts look upon

the settlement of lawsuits with favor because it promotes the interests of litigants

by saving them the expense and uncertainties of trial, as well as the interests of the

judicial system by making it unnecessary to devote public resources to disputes that

the parties themselves can resolve with a mutually agreeable outcome." *Hispanics*

*United,* 988 F. Supp. at 1149 (internal citations omitted).  The policy favoring

settlement is "even more forcefully applicable in Title VII cases because of Congress'

00248339

express preference for settlement in such cases." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

Courts within the Seventh Circuit evaluate nine factors in determining whether a class action settlement meets the standard of being fair, reasonable, and adequate. The relevant factors include: (1) the strength of the plaintiffs' case on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, expense and likely duration of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; (8) the stage of the proceedings and the amount of discovery completed; and (9) the public interest. *See Isby*, 75 F.3d at 1198-99; *Hispanics United*, 988 F. Supp. at 1150.

All of the above factors weigh heavily in support of final approval of the settlement in this case.

B. **Application of the Seventh Circuit's Factors Strongly Support Final Approval of the Settlement Agreement.**

1. **Plaintiffs' case on the merits, balanced against the Defendant's settlement offer**

The Seventh Circuit has repeatedly stated that the single "most important consideration" bearing on the fairness, reasonableness and adequacy of a class settlement is "the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement." *Isby*, 75 F.3d at 1199.

4

00248339

As set forth in greater detail in Plaintiffs' Memorandum in Support of Joint Motion for Preliminary Approval, this is a disparate impact case. Plaintiffs principally allege that Walgreens pays its female retail (non-pharmacist) store management employees less and advances them more slowly and less often than similarly (and in many cases less) qualified male employees. Plaintiffs further allege that these gender disparities are not the result of random or job-related factors but, rather, the proximate result of significant deficiencies in Walgreens' personnel policies and practices. In particular, plaintiffs allege that in-store pay and promotion decisions at Walgreens are largely subjective, providing a conduit for gender bias and producing a disparate impact on female employees in violation of Title VII, and that less discriminatory, more job-related alternatives are available and would equally or better satisfy Walgreens' legitimate interests. Although the parties' respective statistical regression analyses differ, plaintiffs' regression results are probative of discrimination.

The difference between plaintiffs' and defendant's statistical results turns, in substantial part, on disputes about which "explanatory" variables should be included in a proper analysis. In plaintiffs' view, defendant's variables are "tainted," meaning they themselves are representative of unlawful discrimination. Such disputes, although common in Title VII litigation, do present a risk for both parties, as it is difficult to predict how a court or jury will resolve them. In addition

00248339

to the risks on the merits, plaintiffs face the challenge of having this expansive class certified by this Court and, potentially, by the Seventh Circuit.[2]

While plaintiffs strongly believe in the merits of their case, the possible risks weigh in favor of granting final approval to this very favorable settlement.

###   2.   The defendant's ability to pay

It is undisputed that Walgreens has the ability to pay the compensation provided for in the Settlement Agreement. This satisfies the second fairness factor. *See Hispanics United*, 988 F. Supp. at 1166.

###   3.   The likely complexity, length and expense of further litigation and public interest

This litigation is extremely complex, involving over 20,000 class members, with liability based, in perhaps large part, upon complex statistical analyses presented by dueling experts. The duration of the litigation could span years, beyond the four already elapsed, and would include: briefing on the class certification issue, hard fought discovery on the merits and the damages, discovery surrounding the experts' contrasting statistical analyses, the inevitable briefing of summary judgment, a trial at which the experts would present complicated testimony to a jury and an eventual appeal. The expense of prosecuting this case would be enormous, requiring the expenditure of hundreds of additional hours of

---

[2]In *Dukes v. Wal-Mart*, 603 F.3d 571 (9th Cir. 2010), the Ninth Circuit affirmed, *en banc*, the certification of a nationwide class consisting of all current and former female employees of Wal-Mart Stores. The Supreme Court very recently granted *certiorari* on the question whether the class certification was proper. In granting *certiorari*, the Supreme Court also, *sua sponte*, directed the parties to brief the issue "whether the class certification ordered . . . was consistent with Rule 23(a)" in the first instance. *Wal-Mart v. Dukes*, 2010 WL 3358931 (Dec. 6, 2010).

00248339

work by both parties. Plaintiffs' counsel has already expended over 2,000 hours, $815,702 in billed time, and $243,410.90 in out-of-pocket expenses. Declaration of Matthew J. Piers in Support of Final Approval ¶¶ 5, 6 ("Piers Suppl. Decl."), which is attached as Exhibit 2. Both of those numbers would increase dramatically if this case were to proceed to trial.

The defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary. They are represented by well-respected and capable counsel. A recovery for the class as the result of a favorable judgment, if obtained, would occur only after hard fought and costly discovery, a long and arduous trial, post-trial motions, and lengthy appeals. There is no question that this settlement produces a recovery at far less expense, much sooner and, most significantly, with more certainty than if the parties were to litigate the matter.

The settlement also advances the interests of judicial economy and avoids the substantial time and expense that would be necessary to litigate this case and is, therefore, in the public interest. *See American Civil Liberties Union of Illinois v. U.S. Gen. Serv. Admin.*, 235 F. Supp. 2d 816, 819-820 (N.D. Ill. 2002)(Castillo, J.)(citing *Hiram Walker & Sons*, 768 F.2d 888-89)("the settlement furthers the public interest by avoiding costly, unnecessary and uncertain litigation in favor of a mutually beneficial resolution of class-action lawsuits"). Resolution of this Title VII action also imposes significant obligations on the defendant, one of America's largest employers, to make its compensation and promotional processes more objective and, therefore, more equitable. *See, e.g., Hiram Walker & Sons,* 768 F.2d

7

00248339

888-89 (appellate court applies a narrow standard of review to consent decrees because of "the general policy favoring voluntary settlements of class action disputes," especially in Title VII cases).

             **4.**      **The amount of opposition to the settlement and the reactions of members of the class to the settlement**

The settlement enjoys the support of the vast majority of the members of the class. Of 21,575 potential class members, the Settlement Administrator received only 213 timely, valid requests for exclusion from class members. Ex. 1 (Patton Decl. ¶¶5, 9.[3] This number represents less than 1% of the class. It is extremely unusual *not* to encounter some objections or requests for exclusion to proposed class action settlements. *See, e.g., Uhl*, 309 F.3d at 987-88 (holding that district court did not abuse its discretion when it approved settlement on behalf of a class from which 250 of the 58,000 class members opted out); *Hiram Walker & Sons,* 768 F.2d at 891-92 (stating that "without more, a large number of objectors will not result in the reversal of a district court's approval of a consent decree").

In addition to the very few number of class members electing to opt-out, only five (5) class members (two one-hundredths of one percent of the class) objected to the settlement.[4] As explained below, all five (5) of the objections lack merit.

---

    [3]The Settlement Administrator received a total of 249 opt out forms. Of the 249 opt out forms, 12 forms were untimely and 24 forms were technically deficient because they lacked an address, the required statement, and/or a signature. Ex. 1 ( Patton Decl. ¶9).

    [4] Although the class notice directed class members to mail their objections to the Court, plaintiffs' counsel, and defendant's counsel, not all of the objectors did so. Plaintiffs will address all of the letters of objection received by counsel for plaintiffs or defendant.

00248339

### a. Benia Joseph

Ms. Joseph, a terminated employee, objects to the settlement on the basis that Walgreens should provide a letter of reference, a note that she was improperly discharged, and an opportunity to be rehired at Walgreens. *See* Letter from Benia Joseph, dkt. #119. The relief she seeks is outside the scope of the claims and relief possible in this case. The class complaint and the settlement address issues of compensation and promotion, specifically that Walgreens paid its female retail (non-pharmacist) store management employees less and advanced them more slowly and less often than similarly qualified male employees. No claims have been brought, or compromised, with respect to the discharge of any absent class member.

### b. Amber Scott

Ms. Scott objects to the proposed settlement on the basis that she was not promoted from a position in the pharmacy to the position of Assistant Manager between February 2004 and September 2004 because she had her pharmacy technician license and possibly because of her gender. *See* Letter from Amber Scott, dkt. #120. The Settlement Class includes only females employed by Walgreens in retail career path positions below District Manager during the Class Period – that is, female employees employed as MGTs, EXAs and MGRs. Settlement Agreement § III.D.1. The Settlement Class does not include women who, like Ms. Scott, held the position of pharmacy technician. Furthermore, the class period begins

00248339

September 11, 2004 and, as a result, Ms. Scott's objection falls outside the time frame covered by the Settlement.

Ms. Scott also complains that after she was promoted to the position of "Assistant Manager"[5] in September 2004, she was required to fill in at pharmacies. However, she does not state that she was paid less as a result of filling in at pharmacies. To the extent Ms. Scott would have preferred to not work in the pharmacy, her objection does not in any way indicate that the settlement is unfair or unreasonable.

### c. Katrina Schwartz

Ms. Schwartz objects to the settlement on the basis that although the class period extends from September 11, 2004 through March 31, 2009, she was employed by Walgreens from February 21, 2009 until October 23, 2009 and, accordingly, the class period is not coextensive with her period of employment. *See* Letter from Katrina Schwartz, dkt. #121. The class period, of course, was not matched, and could not be matched, to any particular class member's exact start and end dates.[6]

### d. Kelly Ann Stefanich

Ms. Stefanich objects to the settlement on the basis that Walgreens does not treat women differently than it treats men. *See* Letter from Kelly Ann Stefanich, dkt. #122. Ms. Stefanich's objection would have been more appropriately styled as a

---

[5] It appears from defendant's records that Ms. Scott was promoted to the position of MGT (Assistant Manager/Management Trainee) in September 2004.

[6] The beginning of the class period is a function of the statute of limitations and Title VII's charge filing period, while the end of the class period, as the Court may recall, was a subject of extensive negotiation.

00248339

request for exclusion. She has no objection to the relief being provided to the class as a whole; she merely has not had the experience that is substantiated by the statistical evidence in this case. Her objection does not implicate the fairness or adequacy of the settlement. *See Hispanics United*, 988 F. Supp. at 1167 (rejecting objection that defendant had not discriminated because objector had overlooked fact that by settling defendant avoided a "finding of discrimination and tremendous expense").

### e.  Bebi Zaima Alli

Ms. Alli objects to the settlement for the following reasons: she states that (1) she was assigned shifts that were less favorable than those assigned to men; (2) she received inadequate training; (3) she was not given an opportunity for promotion; (4) she was denied an opportunity for overtime; (5) unlike male managers, she was not given performance evaluations or reviews; (6) she was issued two disciplinary write ups; and (7) her share of the settlement is too low. *See* Letter from Bebi Zaima Alli, dkt. #123. Her objection raises issues (shift assignments, training, and overtime) outside the scope of the claims in the class complaint. Her assertion that her monetary award in this case is too low does not address or challenge either the gross settlement amount or the formula used to allocate settlement benefits between and among class members. To the extent Ms. Alli wishes to pursue claims outside the scope of the class complaint and the proposed settlement, nothing in the settlement precludes her from doing so. This settlement releases only claims

11

00248339

relating to sex discrimination in compensation and promotion. Settlement Agreement § V.A.

In addition to the five objections and the 213 opt outs, class members had a "right to present a challenge to errors in the dates of employment and/or to MGT, EXA and MGR position(s)" listed on the Estimated Settlement Payment Form. Settlement Agreement § IV.E. The Settlement Administrator received 224 such challenges. Ex. 1 (Decl. of Patton, ¶10).[7] It is the Settlement Administrator's duty to determine the accuracy of and resolve the challenges. Settlement Agreement § IV.E.

### 5. The presence of collusion in reaching a settlement

This settlement is the result of protracted, contentious, arm's length negotiations between experienced counsel that spanned almost three years. Declaration of Matthew J. Piers In Support of Preliminary Approval ("Piers Decl.") ¶¶10-12, 19 (attached as Exhibit C to Preliminary Approval Memorandum); Declaration of John M. Brown In Support of Joint Motion for Preliminary Approval of Class Action Settlement ("Brown Decl.") ¶¶8-10, 19 (attached as Exhibit D to Preliminary Approval Memorandum). The parties were assisted by neutral third parties beginning with Linda Singer, Esq., a professional paid mediator. The parties then met with Magistrate Judge Arlander Keys and, finally, resolved the

---

[7]The Settlement Administrator rejected 29 of the challenges as untimely and 144 of the challenges for failing to submit any supporting documentation, as required by Section IV.E of the Settlement Agreement. Ex. 1 (Patton Decl. at ¶10). Of the 51 challenges that were timely and had supporting documentation, the Settlement Administrator approved 20 of the challenges and denied 31 challenges. *Id.* The Settlement Administrator's decision is final, binding, and non-appealable. Settlement Agreement § IV.E.1.

matter with this Court's assistance. These arm's-length negotiations resulted in an agreement on the potential awards to members of the class, the extensive injunctive relief and – separately -- the fees and costs of plaintiffs' counsel. *Id.* There is no suggestion of collusion in this settlement.

### 6. The opinion of competent counsel

Class counsel are experienced, accomplished class action litigators. *See* Ex. C Preliminary Approval Memorandum (Piers Decl. ¶¶4-6); Ex. D to Preliminary Approval Memorandum (Brown Decl. ¶4). In the considered opinion of lead counsel, the settlement achieves the best possible result for the Class Members under the circumstances. *See* Ex. C to Preliminary Approval Memorandum (Piers Decl. ¶¶14-18); Ex. D to Preliminary Approval Memorandum (Brown Decl. ¶¶15-18). Their recommendation, while not conclusive, should be given a presumption of reasonableness, and is entitled to significant weight. *Hispanics United*, 988 F. Supp. at 1170 (internal citations omitted).

### 7. The stage of the proceedings and the amount of discovery completed

Since November 2007, the parties have engaged in informal discovery, expert analyses and negotiations. Walgreens provided plaintiffs' counsel with comprehensive electronic work history, promotion, and earnings data on its retail, store management workforce. This data was then subsequently updated as time passed. The parties retained expert witnesses to analyze and run regressions on the data and exchanged several rounds of analyses by these experts, who disputed the inferences to be drawn from the data. Walgreens provided, and plaintiffs'

00248339

counsel reviewed, the transcripts and exhibits from Rule 30(b)(6) depositions taken of Walgreens representatives in the similarly pled *Tucker v. Walgreens* case, in which private plaintiffs and the EEOC alleged discrimination by Walgreens on the basis of race. In *Tucker,* although the focus was on race rather than gender discrimination, the relevant pay and promotional policies and practices at issue were substantially the same (for example, the bases upon which employees were selected for raises and promotions). *Tucker v. Walgreen Co.,* Nos. 05-cv-440-GPM and 07-cv-00172 (S.D. Ill., East St. Louis Division).

On the basis of this exchange of information and with extensive participation by both sides' statistical experts, each well-recognized leaders in the field of statistical evidence in employment discrimination cases, plaintiffs and defendant entered into settlement negotiations, which lasted through the spring of 2010.

As a result of the exchange of informal discovery, expert analyses, and extensive negotiations, counsel are aware of the strengths and weaknesses of their claims and were therefore well-prepared to reliably gauge the reasonableness of the settlement.

## III.   THE NOTICE PROVIDED TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS.

The manner and form of notice provided to the Settlement Class are fully compliant with the requirements of Rule 23(e)(1) and Due Process.

Pursuant to this Court's Administrative Order No. 1, the Settlement Administrator mailed the Notice of Proposed Class Action Settlement and the

14

00248339

Estimated Settlement Payment Form (collectively, "Notice Packet") to 21,575 class members via first class mail on October 18, 2010. Ex. 1 (Patton Decl. ¶¶4-5).

As set forth in the Settlement Agreement IV.C., the Settlement Administrator ran all Class Member addresses through the United States Postal Service's national Change of Address database prior to mailing. *Id.* at ¶5. Of the 21,575 Notice Packets that were mailed, 2,061 have been returned as undeliverable, 2,024 were traced, and 1,806 were re-mailed to new addresses. *Id.* at ¶8. In addition to mailing the Notice Packets, on or about October 18, 2010, the Settlement Administrator established a website (www.walgreensgendersettlement.com) with information relating to the settlement and claims procedure, including links to obtain a copy of the Settlement Agreement and Notice of Proposed Class Action Settlement. *Id.* at ¶6. The Administrator has also maintained a toll-free telephone number for class members to call to obtain the Notice Packet, if requested, and information about the settlement. *Id.* at ¶7. As of this date, the Settlement Administrator has spoken with approximately 440 Class Members. *Id.*

Rule 23 and the Due Process clause require that notice be "reasonably calculated, under all of the circumstances, to apprize interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." 4 Newberg on Class Actions § 11:53 (4th ed. 2010). That standard has been more than satisfied here.

## IV. THE REQUIREMENTS OF RULE 23(a) and 23(b)(3) HAVE BEEN SATISFIED.

00248339

15

Settlement classes "afford[ ] considerable economies to both the litigants and the judiciary and [are] also fully consistent with the flexibility integral to Rule 23," *In re General Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995), and have become "a stock device" for resolving major multi-plaintiff litigation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). The proposed Settlement Class in this case fully satisfies the criteria set forth in Rules 23(a) and 23(b)(3).

### A.   The Requirements of Rule 23(a) Are Satisfied.

The proposed class in this case satisfies each of the four "class-qualifying criteria," *Amchem*, 521 U.S. at 621, specified in Rule 23(a), as follows:

**Numerosity:**  There are more than twenty-one thousand women encompassed within the proposed Settlement Class.

**Commonality:**  The common issues of law and fact in this case include, among others: the degree and impact of Walgreens' reliance on subjective, unweighted factors to make pay and promotional decisions, whether the subjectivity of that decision making process adversely impacts women and, if so, whether that impact can be justified as job-related and consistent with business necessity.

**Typicality:** The claims of the Named Plaintiffs and the claims of absent class members all "arise from the same practice or course of conduct . . . and . . . are based on the same legal theory," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), namely that the discrimination all Class Members claim to have suffered occurred

16

00248339

as a result of excessively subjective decision making in a corporate culture where that subjectivity is allowed to operate unchecked.

**Adequacy of Named Plaintiffs and counsel:** There are no disabling conflicts between the Named Plaintiffs and the class, there are no issues of allocation between present and "future" claimants, and Class Counsel are experienced and accomplished in class litigation.

### B.   The Requirements of Rule 23(b)(3) Are Satisfied.

Rule 23(b)(3) requires both "predominance" and "superiority." Both are satisfied here. The class shares a single claim, namely that Walgreens' pay and promotional policies adversely affect women, which predominates over any individual claims. The individual prosecutions of claims by the thousands of members of the plaintiff class would not be feasible given the relatively small size of Class Members' individual wage losses (the vast majority of which are under $500). *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").[8]

### V.   THE AGREED UPON ATTORNEY'S FEES ARE REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL.

---

[8]Because the parties are requesting class certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. 591, 620.

00248339

Under the Settlement Agreement, subject to Court approval, plaintiffs' counsel will be paid $1,800,000 from the Settlement Fund to reimburse their costs and provide attorneys' fees. Settlement Agreement § XIV. This means that plaintiffs' aggregate fee and costs request amounts to less than 11% of the total settlement amount in this case. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)(standard "benchmark" of 25% of common fund, paid from the fund, is fair and reasonable).[9]

Walgreens does not contest Class Counsel's entitlement to these fees, nor does Walgreens challenge the reasonableness of the amounts, which were negotiated separately from and only after the parties had reached agreement on relief for the class. Ex. 2 (Piers Suppl. Decl. ¶4); Ex. 3 (Brown Supp. Decl. ¶4).

## VI. THE PROPOSED INCENTIVE AWARDS TO THE NAMED PLAINTIFFS ARE REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL

Under the Settlement Agreement, subject to Court approval, the Named Plaintiffs will receive incentive awards totaling, collectively, $80,000. Plaintiffs ask the Court to divide the $80,000 as follows: $50,000 to plaintiff Pamela A. Jones, and $10,000 each to named plaintiffs Andrea Mays, Nicole Lewis and Lillian Weldon. This is comparable to the individual incentive awards actually made in *Tucker*, where the aggregate gross amount of "enhancement" made payments to fourteen plaintiffs totaled $419,000 (or an average of about $30,000 per Tucker

---

[9]As of December 14, 2010, plaintiffs' counsel's fees (*i.e.* lodestar) total approximately $815,000, and their out-of-pocket expenses amount to approximately $243,000. Ex. 2 (Piers Suppl. Decl. ¶5).

00248339

plaintiff as compared to the average of $20,000 per plaintiff here. *See* Exhibit B to Preliminary Approval Memorandum (*Tucker* Consent Decree Exhibit D).

In the opinion of Class Counsel, Matthew J. Piers, Joshua Karsh and José Behar, each experienced Title VII class action practitioners, each with twenty or more years of experience in the field, Plaintiff Pamela A. Jones is more deserving of an incentive payment than any other Named Plaintiff they have ever represented.

During the course of and in preparation for this litigation, the Named Plaintiffs' assistance to Class Counsel has been invaluable. The details of the assistance provided by the Named Plaintiffs is set forth more fully in Plaintiffs' Memo in Support of Joint Motion for Preliminary Approval. *See* Preliminary Approval Memorandum at 19-22.

Furthermore, with the advent of the heightened "plausibility" pleading requirements imposed by the Supreme Court's decisions in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the number of class Title VII cases, particularly disparate impact cases, that can be pled sufficiently to survive a motion to dismiss and proceed to discovery without the aid of a named plaintiff who has conducted an extensive investigation of the kind that Ms. Jones did has diminished. Therefore, in the wake of *Iqbal* and *Twombly*, the reasons for class-plaintiff incentive awards are newly urgent.

## VII.  CONCLUSION

For all the reasons stated above, plaintiffs request that the Court:

1.  Grant final approval to the class-wide Settlement Agreement negotiated by the parties;

00248339

19

2.  Certify this case as a class action for settlement purposes only, defining the class as: "All women who were employed by Walgreens as an MGT, EXA, or MGR at any time between September 11, 2004 and March 31, 2009.";

3.  Designate the Named Plaintiffs as representatives of the class and their attorneys as Class Counsel;

4.  Approve Plaintiffs' request for $1,800,000 in attorneys' fees as fair and reasonable;

5.  Approve the incentive awards to Named Plaintiffs as follows: $50,000 to plaintiff Pamela A. Jones, and $10,000 each to named plaintiffs Andrea May, Nicole Lewis and Lillian Weldon; and

6.  Enjoin all members of the Settlement Class from commencing, prosecuting, or maintaining any claim already asserted in, and encompassed by, this Action, or challenging or seeking review of or relief from any order, judgment, act decision or ruling of this Court in connection with the Settlement Agreement.

DATED: December 16, 2010

                                        /s/ Joshua Karsh
                                        Joshua Karsh

Matthew J. Piers
Joshua Karsh
José Jorge Behar
Hughes Socol Piers
    Resnick & Dym Ltd.
70 West Madison Street
Suite 4000
Chicago, IL 60602
Telephone: 312.580.0100
Facsimile: 312.580.1994

John M. Brown
Law Office of John M. Brown
118 Oak Street
Hartford, CT 06106
Telephone: 860.560.0100
Facsimile: 860.656.763

*Attorneys for Plaintiffs and the Plaintiff Class*

00248339